| | | |
|---|---|---|
| DAVID OPPENHEIMER,<br>　　　　Plaintiff,<br><br>v.<br><br>LINDA CHESNUT-TOUPIN,<br>TOUPIN, INC., CURTIS J. HANNAH, *and*<br>MARY KAY INC.<br>　　　　Defendants. | §§§§§§§§§§§ | CA No. __1:17-cv-28__4<br><br><br><br><br><br><br><br>**JURY DEMANDED** |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, David Oppenheimer ("Oppenheimer" or "Plaintiff"), for his complaint against Defendants, Linda C. Toupin ("Toupin"), Toupin, Inc. ("Inc"), Curtis J. Hannah ("Hannah"), and Mary Kay Inc. ("MK"), (hereinafter collectively, "Defendants"), alleges:

### JURISDICTION/VENUE

1.　Oppenheimer's claims arise under the copyright laws of the United States, 17 U.S.C. 101 *et. seq.*, (hereinafter the Copyright Act), and 17 U.S.C."1202 *et seq.* of the Digital Millennium Copyright Act ("DMCA").

2.　Subject matter and personal jurisdiction is vested in this Court pursuant to 28 U.S.C. 1338. Additionally, this Court has subject matter jurisdiction under 28 U.S.C. 1331 inasmuch as this claim arises under the copyright laws of the United States. This Court has personal jurisdiction over Defendants because they have purposely availed themselves of the privileges of the forum state -- by using a photograph taken within North Carolina, of a landmark building within the state -- in an advertisement directed at citizens of North Carolina, and affecting North Carolina businesses (including, but not limited to marketing, sales, and tourism).

Oppenheimer's claims arise out of these activities directed at the forum state, and the exercise of justice is constitutionally reasonable in the forum state. Venue in this judicial district is therefore proper pursuant to 28 U.S.C. 1400(a) and 28 U.S.C. 1391(b) and (c), and the "*Calder* effects test" as laid down by the U.S. Supreme Court in *Calder v. Jones*, 465 U.S. 783, 789–90 (1984).

**THE PARTIES**

3. Plaintiff is a citizen of North Carolina engaged in the business of professional photography who resides in and has a principal place of business in Asheville, Buncombe County, North Carolina.

4. Toupin is a citizen of either the State of Kentucky or the State of Indiana, and will receive actual notice of this filing at her current residence, 1893 GOODPASTER WAY, LEXINGTON KY 40505-9005, or such other place as she may be found.

5. Inc. is an Indiana Corporation and will receive actual notice of this suit by service upon its registered agent, Linda Chesnut-Toupin, 501 N. CAPITOL AVE, CORYDON, IN., 47112 or such other place where the Registered Agent may be found.

6. HANNAH is an individual residing in Davies County, KY, and may be served at his home, 308 E. 23rd St. OWENSBORO, KY. 42303-5116, or such other place as he may be found.

7. MK is a Texas Corporation with a principal place of business in Dallas County, Dallas, TX, and will receive actual notice by service upon its registered agent, CT CORPORATION SYSTEM, 1999 Bryan Street, Suite 900, Dallas, TX. 75201.

**INTRODUCTORY FACTS**

8. Oppenheimer is a professional photographer, and is the author (photographer) of, and at all times relevant to this claim, has been and is now the sole owner and proprietor of all

right, title and interest in and to the copyrights in the photograph at issue in this matter (the "Work") See **Exhibit A**.

9. Oppenheimer makes his photographic works available online at his website http://www.performanceimpressions.com.

10. Oppenheimer has complied in all respects with Title 17, U.S.C. § 102, *et seq.,* and all other laws governing federal copyright applicable to the Works and registered the copyrights with the Register of Copyrights at the U.S. Copyright Office. See **Exhibit B**.

11. At all relevant times hereto, Oppenheimer has and continues to be the sole owner of all rights, titles, and interests in and to the aforementioned registration and photograph. Oppenheimer's copyrights in the above-described Work are presently valid and subsisting, and were valid and subsisting from the moment of its creation, and all conditions precedent to the filing of this suit have occurred.

12. For many years, it has been Oppenheimer's custom and business practice to display his copyright management information ("CMI") on his copyrighted photographs when they are first published. Oppenheimer's Work at issue in this case, as first published, prominently displays his CMI in the caption and with a watermark, as well as embedded in the metadata of the Work; thus, Defendants were on notice that the Work was copyright protected.

13. On or about November 14, 2016, Oppenheimer first discovered that Defendants had infringed his copyrights beginning sometime around August, 2016, by uploading and publishing (or directing others to do so) his protected image at the following URLs:

> http://www.lindatoupin.com/links-videos/ and http://www.lindatoupin.com/wp-content/uploads/2016/02/2016-Road-Trip-with-Linda.pdf *and*
>
> http://www.nataliev.pink/events.html *and*
>
> http://www.nataliev.pink/uploads/7/1/4/5/7145055/2016_road_trip_with_linda_1.pdf.

These URLS advertised a "Toupin Think Tank" to help Mary Kay sales consultants move up the Mary Kay sales pyramid, ultimately increasing sales commissions and revenues for Inc., Toupin, and Mary Kay. A screenshot of the infringing image is provided herein as **Exhibit C**.

14. Upon information and belief, Toupin and Inc. hired Hannah to print an unknown number of flyers and possibly other advertisements such as CDs which incorporated Oppenheimer's protected image of the situs of the "Think Tank," The Grove Park Inn, and which are believed to have been distributed by one or more of the Defendants.

15. Upon information and belief, Defendants located and accessed Oppenheimer's Works on his website, http://www.performanceimpressions.com, or through a Google image search.

16. On March 7, 2017, Oppenheimer sent Toupin an email inquiring about where she had acquired his photograph of the Grove Park Inn (**Exhibit D,** Email Thread) – where her "Think Tank" was apparently held.

17. On March 15, 2017, Oppenheimer, through the undersigned counsel, sent a "Cease and Desist" letter *via* email to Defendants Toupin and MK which requested information about the unauthorized publication, and asked them to protect potentially relevant electronically-stored information. See **Exhibit E**. Despite Oppenheimer's persistent and best efforts, Toupin has failed to provide the requested information, MK has denied any responsibility for its "Independent National Sales Director" Toupin/Inc.'s infringing activities, and so the parties have been unable to resolve the matter. Suit has thus become necessary.

# CAUSES OF ACTION

## COUNT I – COPYRIGHT INFRINGEMENT

18. Oppenheimer re-alleges and incorporates paragraphs 1 – 17 hereinabove as if recited *verbatim*.

19. Defendants have infringed Plaintiff's copyrights in and to the image described in paragraph 8 and attached as Exhibit A by scanning, downloading, copying, reproducing, distributing, publishing, displaying and/or otherwise using unauthorized copies of said photograph within the United States in violation of the copy rights of Title 17.

20. Upon information and belief, each of the Defendants have benefitted from their infringements of The Work, while Oppenheimer has suffered and will continue to suffer monetary damages, irreparable injury to his business, reputation, and goodwill, and dilution in the marketplace; therefore, Oppenheimer is entitled to injunctive relief, disgorgement of defendants' profits attributable to the infringements, actual damages, statutory damages, and other relief set forth in the Act.

## COUNT II – CONTRIBUTORY COPYRIGHT INFRINGEMENT

21. Oppenheimer re-alleges and incorporates paragraphs 1 – 20 hereinabove as if recited *verbatim*.

22. One or more of the named Defendants have knowingly caused, induced, enabled, facilitated, and/or materially contributed to the infringement complained of herein by directly and/or indirectly promoting the infringement, and/or have refused to exercise their ability to prevent and/or stop the infringement made possible by their actions.

## COUNT III – VICARIOUS COPYRIGHT INFRINGEMENT

23. Oppenheimer re-alleges and incorporates paragraphs 1 - 22 hereinabove as if recited *verbatim*.

24. Pleading further but without waiver of the foregoing, Oppenheimer shows that Toupin is an officer, director, manager, and/or other principal of Inc.

25. On information and belief, Toupin owns much of the stock of Inc., and controls nearly all decisions of it, and is the dominant influence in the company. Further, Toupin possesses the right and ability to supervise and/or control the infringing conduct of Inc., and/or to prevent or stop the infringement once it began. Upon information and belief, Toupin also has an obvious and direct financial interest in the infringing activities of Inc.

26. In addition, the conduct of the Inc. as described above was performed and accomplished through the direction, control, supervision and/or conduct of Toupin. Additionally, MK had the right and ability to supervise and/or control the infringing conduct of Toupin and/or Inc., and/or to stop the infringement once it began. Additionally, on information and belief, MK and Toupin received pecuniary benefit from the acts of infringement of Inc.

27. Accordingly, Toupin and MK are liable to Oppenheimer as joint and/or contributory infringers, or are otherwise vicariously liable for the actions of Inc. and/or Hannah.

## COUNT IV – VIOLATIONS OF THE DIGITAL MILLENIUM COPYRIGHT ACT

28. Oppenheimer re-alleges and incorporates paragraphs 1 - 27 hereinabove as if recited *verbatim*.

29. Oppenheimer clearly marked the Work both on the face of the image and in the metadata with full notices of copyright, all rights reserved, instructions, Oppenheimer's address, phone number, email, and website. Oppenheimer did this to distinguish his Work from the works

of others in his field, as well as to ensure that anyone who views the Work understands that Oppenheimer owns all rights and title. On information and belief, one or more of the Defendants (discovery will reveal which) violated the DMCA by removing Oppenheimer's copyright management information ("CMI"), or having others do so.

30. In accomplishing the infringements identified above, and upon information and belief, one or more of the Defendants intentionally removed and/or omitted Oppenheimer's CMI from copies of Oppenheimer's Works.

31. Upon information and belief, one or more of the Defendants distributed copies or derivatives of such works knowing that such CMI had been removed or omitted without authorization.

32. At the time Oppenheimer's CMI was removed from copies of his Work, and at the time one or more Defendants distributed copies of the work from which the CMI had been removed or omitted, one or more of the Defendants knew or had reasonable grounds to know that such behavior would induce, enable, facilitate, and/or conceal the infringement of Oppenheimer's copyrights.

33. Oppenheimer is entitled to and seeks recovery of statutory damages from Defendants not less than $2,500 and not more than $25,000 for each act committed in violation of his rights under 17 U.S.C. § 1202.

34. Pursuant to 17 U.S.C. § 203(b)(5), Oppenheimer is entitled to and seeks recovery of his reasonable attorney's fees.

**CAUSATION/DAMAGES**

35. As a result of Defendants' above-described acts of copyright infringement and DMCA violations, Oppenheimer has sustained actual damages in an amount not yet ascertained.

Page 7 of 10

Case 1:17-cv-00284-MR   Document 1   Filed 10/11/17   Page 7 of 10

Such actual damages include, but are not limited to, lost profits and/or lost licensing revenue, disgorgement of Defendants' profits attributable to their infringements, statutory damages, research time tracking down and documenting the infringements, attorney time spent placing joint infringers on notice of the infringements, and accomplishing removal of the images from servers and web sites.

36. In addition to damages for copyright infringement, Plaintiff seeks recovery of DMCA penalties as set out above.

## RELIEF REQUESTED

37. Oppenheimer demands an accounting by Defendants of their activities in connection with their infringements of his copyrights in and to the above-described and attached work, as well as disgorgement of their gross profits, and/or all other benefits attributable.

38. Oppenheimer is entitled to and seeks recovery of actual damages plus the Defendants' profits attributable to the infringements, as well as DMCA penalties not exceeding $25,000 for each act committed of his rights under 17 U.S.C. § 1202.

39. Alternatively, because the image was registered prior to Defendants' infringements, Oppenheimer seeks recovery of statutory damages up to but not exceeding $150,000 (One Hundred Fifty Thousand Dollars) for the Work infringed, plus costs, including expert witness fees and reasonable and necessary attorney's fees.

**Oppenheimer DEMANDS JUDGMENT AS FOLLOWS:**

40. That Defendants, their agents, employees and/or servants be enjoined *pendente lite* and permanently from infringing Oppenheimer's copyrights in any manner whatsoever, and from publishing through any visual media, and from selling, marketing or otherwise distributing any of his images, and from using his images in sales, marketing, and/or advertising;

41. That Defendants be required to deliver up, under oath, for impounding during the pendency of this action, and for destruction thereafter, all images which infringe Oppenheimer's copyrights, and all prints, film negatives, magnetic tapes, digitally-scanned and/or stored images, and all other articles by means of which such infringing copies may be reproduced, which are in the possession of, constructive possession of, or under the direct or indirect control of the Defendants;

42. That Defendants provide an accounting of all gains, profits and advantages derived by them as a result of the willful and unlawful acts of copyright infringement above-described;

43. That Defendants be ordered jointly and severally, to pay over to Oppenheimer his actual damages sustained, in addition to all their profits attributable to the infringements, and which are not taken into account in computing Oppenheimer's actual damages incurred as a result of Defendants' copyright infringements described herein;

44. In the alternative, at Oppenheimer's option after verdict, that Defendants be ordered jointly and severally, to pay maximum statutory damages in the amount of $150,000 for Defendants' infringement of Oppenheimer's copyrights in the Work pursuant 17 U.S.C. § 504(c); or such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

45. That Defendants be order jointly and severally, to pay to Oppenheimer an award of statutory damages for each and every violation by Defendants of the DMCA pursuant to 12 U.S.C. § 1202, *et seq.*;

46. That Defendants be ordered jointly and severally, to pay to Oppenheimer his costs including attorney's fees; *and*

47. That Oppenheimer obtains such other and further relief as this court shall deem just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES.**

**Date:** _____

**LEJUNE LAW FIRM**

By: /s Dana A. LeJune
Dana A. LeJune
dlejune@triallawyers.net
Texas Bar: 12188250
NC Bar: 49025
6525 Washington Avenue
Suite 300
Houston, Texas 77007
713.942.9898 Phone
713.942.9899 Fax
*Attorneys for Plaintiff*