```
IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
           ASHEVILLE DIVISION
      CIVIL CASE NO. 1:17-cv-00284-MR
```

DAVID OPPENHEIMER,            )
                              )
            Plaintiff,        )
                              )
      vs.                     )       **MEMORANDUM OF**
                              )       **DECISION AND ORDER**
LINDA CHESNUT-TOUPIN, et al., )
                              )
            Defendants.       )
_____)

**THIS MATTER** is before the Court on Defendant Hannah's Motion to Dismiss [Doc. 19] and Defendant Mary Kay's Motion to Dismiss [Doc. 23]. Plaintiff responded to these motions [Docs. 30, 31] and Defendants replied to these responses [Docs. 34, 36].

**I.    BACKGROUND**

The Plaintiff David Oppenheimer ("Plaintiff") filed this action on October 11, 2017, asserting claims under the Copyright Act, 17 U.S.C. §§ 101 *et seq.* and the Digital Millenium Copyright Act (DMCA), 17 U.S.C. §§ 1202, *et seq.* against the Defendants Linda Chesnut-Toupin ("Linda Toupin") and Toupin, Inc. (collectively, the "Toupin Defendants" or "Toupin"); Curtis J. Hannah ("Hannah"); and Mary Kay Inc. ("Mary Kay"). [Doc. 1].

Plaintiff is a professional photographer who resides in North Carolina and conducts his work in Asheville, North Carolina. [Doc. 1, ¶ 3]. Linda Toupin is a resident of Kentucky and President of Toupin, Inc., an Indiana corporation with a principal office in Jeffersonville, Indiana. [Doc. 16-1, ¶¶ 1, 2]. Acting through Toupin, Inc., Linda Toupin is an Independent National Sales Director of Mary Kay. [Id., ¶ 4]. Toupin maintains a website at the web address, www.lindatoupin.com ("Toupin Website"). The primary purpose of the Toupin Website is to provide a place for Mary Kay Independent Beauty Consultants and Independent Sales Directors to register for Toupin's events. [Id., ¶ 5]. The development for the Toupin Website has occurred in Indiana and Kentucky. The Toupin Website is stored on a server in California. [Id., ¶ 3].

Hannah is a resident of Kentucky. [Doc. 19-1, ¶ 1]. He conducts business through his sole proprietorship "Curtis J. Hannah." [Id., ¶ 2]. In service to Toupin, Hannah updates the Toupin Website with items provided to him by Toupin. [Id., ¶ 3]. Hannah was not involved in the creation of the Toupin Website and he does not create or alter anything provided to him by Toupin before he places the item on the Toupin Website. [Id., ¶ 4].

In his unverified Complaint, the Plaintiff alleges that the Defendants infringed his copyrights by using one of the Plaintiff's photographs of the

Omni Grove Park Inn on various websites and other promotional materials to promote a "Toupin Think Tank," an event that the Plaintiff alleges was designed "to help Mary Kay sales consultants move up the Mary Kay sales pyramid, ultimately increasing sales commissions and revenues" for [the Toupin Defendants] and Mary Kay." [Id. at ¶ 13]. Plaintiff also contends the Defendants violated the DMCA by removing Plaintiff's identifying mark and information from the digital photograph.[1] [Id. at ¶ 29]. Plaintiff alleges that Mary Kay "had the right and ability to supervise and/or control the infringing conduct of [the Toupin Defendants] and/or to stop the infringement once it began." [Id. at ¶ 26]. The Plaintiff further alleges that both Toupin and Mary Kay financially benefitted from the infringing acts of Toupin, Inc. [Id.]. With respect to Hannah, the Plaintiff alleges, upon information and belief, that "[the Toupin Defendants hired Hannah to print an unknown number of flyers and possibly other advertisements such as CDs which incorporated [Plaintiff's] protected image of the situs of the "Think Tank," The Grove Park Inn, and which are believed to have been distributed by one or more of the Defendants." [Id. at ¶ 14].

---

[1] The Court hereinafter refers to the alleged infringing use of the photograph and the removal of the identifying mark collectively as the infringing conduct or the infringing use.

In early December 2017, the Defendants moved to dismiss the Plaintiff's Complaint due to the lack of personal jurisdiction. [Docs. 16, 19, 23]. Defendant Hannah, in support of his motion to dismiss, submitted a brief and his Declaration. [Docs. 19-1, 21]. In support of its motion, Mary Kay submitted a brief; the Declaration of Mike Strong, Mary Kay's Director of Sales Development; a copy of the Mary Kay Beauty Consultant Agreement; a copy of Toupin's Sales Director's Agreement; and the Declaration of Loretta Humphrie, the Manager of Legal Administration for Mary Kay. [Doc. 23 with Exs.]. On December 13, 2017, the Plaintiff moved to conduct early limited jurisdictional discovery. [Doc. 24]. On January 8, 2018, the Court granted the Plaintiff's motion and allowed the Plaintiff to conduct discovery limited to the issue of personal jurisdiction. [Doc. 29]. With respect to Defendant Mary Kay in particular, the discovery was "limited to the specific issue regarding the purported agency relationship between Mary Kay and the Toupin Defendants as it related to the supervision and control of Toupin's website." [Id. at 3-4].

After jurisdictional discovery was complete, the Plaintiff responded to Defendants' motions to dismiss with briefs in opposition to each of the respective motions, documentary evidence that had been obtained in jurisdictional discovery, and copies of Hannah's and Toupin's verified

4

jurisdictional discovery responses. [Docs. 30, 31, & 32 with Exs]. The documentary evidence includes a printout of pages from the Toupin Website, a printout of Toupin's social media posts, a copy of the flyer used to promote the Think Tank event that allegedly contains the copyrighted image ("Flyer"), a picture of the copyrighted image at issue, that portion of a document titled "Legal-Ease: Information for All Members of the Mary Kay Independent Sales Force" ("Legal-Ease") related to "Electronic Advertising and the Internet (Internet Guidelines)" ("Guidelines"), and a spreadsheet documenting commissions paid to Toupin from sales made by "personal use" beauty consultants living in North Carolina. [Docs. 30-1, 30-2, 30-4, 30-5, 31-3, & 31-6]. In turn, Mary Kay submitted a reply brief together with a complete copy of Legal-Ease. [Docs. 36, 36-1]. Defendant Hannah also submitted a reply brief together with an email composed by Linda Toupin to Plaintiff regarding the Toupin Defendants' use of the copyrighted image at issue. [Docs. 34, 34-1]. On May 16, 2018, the Plaintiff and the Toupin Defendants' filed a Stipulation of Dismissal voluntarily dismissing the Toupin Defendants with prejudice. [Doc. 37]. As such, only Hannah and Mary Kay remain as defendants. With the foregoing backdrop, the Court addresses the jurisdictional challenges.

## II. STANDARD OF REVIEW

Under Rule 12(b)(2), a defendant must affirmatively raise a personal jurisdiction challenge. The plaintiff, however, bears the burden of demonstrating personal jurisdiction at every stage following such a challenge. Grayson v. Anderson, 816 F.3d 262, 267 (4th Cir. 2016) (citing Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)). "[A] Rule 12(b)(2) challenge raises an issue for the court to resolve, generally as a preliminary matter." Grayson, 816 F.3d at 267 (citation omitted).

Where, as here, the parties have had "a fair opportunity to present to the court the relevant facts and their legal arguments before it rules on the motion," the Plaintiff must prove facts, by a preponderance of the evidence, that demonstrate the Court's personal jurisdiction over the Defendants. Grayson, 816 F.3d at 268-69; see Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 396 (4th Cir. 2003) ("When personal jurisdiction is properly challenged under Rule 12(b)(2), the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence.") (citation omitted). Also, where a defendant submits some form of evidence to counter plaintiff's allegations, the unverified allegations of a plaintiff's complaint can no longer be taken as true. Id. (citing Bruggeman v.

6

Meditrust Acquisition Co., 138 N.C. App. 612, 615, 532 S.E.2d 215, 218 (2000)); Bauer v. Douglas Aquatics, Inc., 207 N.C. App. 65, 68, 698 S.E.2d 757, 761 (2010) ("[W]hen a defendant supplements its motion with affidavits or other supporting evidence, the *unverified* allegations of a plaintiff's complaint can no longer be taken as true or controlling.") (internal quotation marks and citation omitted). As such, the unverified allegations of Plaintiff's Complaint will not be taken as true or controlling for purposes of this motion.

### III.   DISCUSSION

For the Court to have personal jurisdiction, the Plaintiff must prove, by a preponderance of the evidence, that exercising jurisdiction will (1) comply with the forum state's long-arm statute and (2) comport with the due process requirements of the Fourteenth Amendment. See Carefirst, 334 F.3d at 396 (citation omitted). Because North Carolina's long-arm statute has been construed to extend as far as due process allows, Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001), this two-pronged test is collapsed into the single inquiry of whether the exercise of personal jurisdiction over the defendant comports with due process. Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 559 (4th Cir. 2014), cert. denied, --- U.S. ---, 135 S.Ct. 2860 (2015).

A court's exercise of jurisdiction over a nonresident defendant comports with due process if the defendant has sufficient "minimum contacts" with the forum, such that to require the defendant to defend its interest in that state "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). The sufficiency of the contacts depends on the circumstances of the case. A court can have personal jurisdiction over a defendant for all claims if the defendant's contacts with the forum state are continuous and systematic. This is referred to as "general jurisdiction." However, more limited contacts can be sufficient to establish personal jurisdiction over a defendant where those contacts relate to the substance of the particular claim being asserted. This is referred to as "specific jurisdiction." See e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984). In determining whether specific jurisdiction exists, the Court considers (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiff's claims arise out of those activities; and (3) whether the exercise of personal jurisdiction would be constitutionally "reasonable." ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 711-12 (4th Cir. 2002), cert. denied, 537 U.S. 1105 (2003).

Jurisdiction, however, "may not be manufactured by the conduct of others." Chung v. NANA Development Corp., 783 F.2d 1124, 1127 (4th Cir. 1986). Rather, "the defendant's conduct and connection with the forum State [must be] … such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). North Carolina courts have specifically held that "[a]ctions of an independent contractor are not attributable to the party hiring it, and thus do not, without more, establish jurisdiction." Wyatt v. Walt Disney World Co., 151 N.C. App. 158, 166, 565 S.E.2d 705, 710 (2002) (citation omitted). The analysis changes when the relationship is one of agency and the principal has "the right to control both the means and the details of the process by which the agent is to accomplish his task." Id. (citing Williamson v. Petrosakh Joint Stock Co., 952 F.Supp. 495, 498 (S.D. Tex. 1997)). Unlike an independent contractor, the actions of an agent may be sufficient to subject a nonresident corporation to the jurisdiction of a forum. See id.; Bauer, 207 N.C. App. at 77-78, 698 S.E.2d at 766-67 (holding principal "can be considered legally responsible for the acts of its apparent agent [ ] for purposes of personal jurisdiction"); N.C.G.S. § 1-75.2(3) ("[A]cts of the defendant" subjecting it to personal jurisdiction "include[ ] any person's acts for which the defendant is legally responsible.").

9

The Plaintiff argues personal jurisdiction lies over Hannah and Mary Kay solely because these Defendants are "legally responsible for the infringing acts committed by the Toupin Defendants" by "contributory copyright infringement." [Docs. 30 & 33 at 2]. Plaintiff further claims that he "has established that the Toupin Defendants's [*sic*] have enough 'minimum contacts' with North Carolina that the Court may exercise personal jurisdiction over them." [Docs. 30 & 31 at 2].

The Court assumes, for the sake of argument, that Plaintiff has, as he says, established that Toupin had sufficient minimum contacts with North Carolina for the exercise of personal jurisdiction here. With this assumption in mind, the Court addresses the jurisdictional challenges presented by Mary Kay and Hannah.

### A.  Mary Kay

For the Court to have jurisdiction over Mary Kay, Plaintiff must show, by a preponderance of the evidence, that Toupin was acting as an agent for Mary Kay in Toupin's alleged infringing use of the copyrighted image in the Flyer.

This hinges on the degree of Mary Kay's control over what was posted to the Toupin Website. Acts of an independent contractor cannot be imputed to the hiring party for jurisdictional purposes where there is no evidence that

the hiring party controlled those activities. See Stover v. O'Connell Associates, Inc., 84 F.3d 132, 135 (4th Cir. 1996).

In attempting to establish the necessary control by Mary Kay, the Plaintiff points to the Mary Kay Guidelines. The Guidelines, in part, limit the websites a Mary Kay beauty consultant may use to promote his or her business to a "Mary Kay® Personal Web Site" or "any Company Web Site," as those terms are defined in the Guidelines (hereinafter collectively, "Mary Kay Websites"). [Doc. 31-6 at 2]. The Guidelines prohibit using websites that pertain to a consultant's personal business (hereinafter "Member Websites") "to promote your Mary Kay business" and specifically prohibit the incorporation of "Company trademarks or [Mary Kay] copyright protected material" on Member Websites. [Doc. 31-6 at 2]. The Guidelines do, however, allow beauty consultants to *link* to their "Mary Kay Websites" *from* other sites. The Guidelines prescribe that a Member Website that links to the Mary Kay Websites "[s]hould not contain content that violates or infringes upon the copyright, trademark, trade name, patent, literary, intellectual, artistic or dramatic right … of any person entity or person…." [Doc. 31-6 at 9]. As such, Mary Kay expressly prohibited Toupin from any infringing activity as is alleged herein.

11

Plaintiff argues, however, that because Mary Kay never objected to Toupin's use of the Toupin Website (i.e., Toupin's Member Website) to "promote their MK business," arguably in violation of the Mary Kay Guidelines, Mary Kay is now estopped from claiming that the Toupin Website was unauthorized. From this, Plaintiff concludes that the Toupin Website is "clearly subject to MK's stringent control through their Internet Guidelines." [Doc. 31 at 9]. The Plaintiff's argument is without merit.

The gist of Plaintiff's argument seems to be that since Mary Kay prohibited Toupin's conduct, therefore Mary Kay is responsible for Toupin's conduct. The Guidelines provide that a Member Website "should not be used to promote your Mary Kay business on the internet." [Doc 36-1at 13]. Next, the Guidelines prohibit the posting of infringing content on a Member Website when that Member Website links to Mary Kay Websites. More importantly, the Plaintiff has presented no evidence that the Toupin's Website contains a link to Toupin's Mary Kay® Personal Web Site or that Toupin even has such a site. As such, Plaintiff has failed to show that Mary Kay's guidelines dictated any content in Toupin's Website, much less that Mary Kay acceded to any infringement.

Finally, the uncontroverted evidence shows that Mary Kay was not involved in the organizing or the marketing of the Think Tank event and had

12

no knowledge of the event until Mary Kay was contacted by Plaintiff after Plaintiff learned of the alleged infringing use of the photograph. [Doc. 31-3 at 4]. As such, there is no evidence showing that Mary Kay had the right or ability to control any aspect of the Toupin Website, other than to prohibit its use for promotion of Mary Kay business. Absent such power, Mary Kay cannot be subject to derivative personal jurisdiction arising form this Court's jurisdiction over Toupin.

The Court, therefore, lacks personal jurisdiction over Mary Kay and the action against it must be dismissed.

    **B.**    **Hannah**

Similarly, for the Court to have jurisdiction over Hannah, Plaintiff must show, by a preponderance of the evidence, that *Toupin* was acting as an agent *for Hannah* in Toupin's alleged infringing use of the copyrighted image in the Flyer.

The Plaintiff has presented no facts on which the Court may base the exercise of personal jurisdiction over Hannah. The evidence shows that Hannah is an independent contractor who assisted Toupin by posting the Flyer on the Toupin Website. [Doc. 30-3 at 2, 9]. Hannah did not create the Flyer and could not open or edit the computer file containing the Flyer. [Doc. 30-6 at 4].

If anything, Hannah acted as an agent of Toupin, not the other way around. As such, a court may exercise derivative jurisdiction over Toupin where Hannah is found, but not vice versa. The Court lacks personal jurisdiction over Hannah and the action against him must be dismissed.

Being that no other grounds for personal jurisdiction over Hannah or Mary Kay have been presented to the Court, the Court concludes, as a matter of law, that it lacks personal jurisdiction over these Defendants as to all of Plaintiff's claims.

## ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant Hannah's and Defendant Mary Kay's motions to dismiss [Docs. 19, 23] are **GRANTED**. This action is hereby **DISMISSED**.

**IT IS SO ORDERED.**

Signed: September 28, 2018

Martin Reidinger
United States District Judge